UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICE GALLARDO,

        Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
                                                  /

Case No. 11-10695

District Judge Arthur J. Tarnow
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Alice Gallardo brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Parties have filed cross motions for Summary Judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment (Doc. #9) be DENIED and that Defendant's Motion for Summary Judgment (Doc. #10) be GRANTED.

**I.    PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits ("DIB") on March 5, 2008, alleging a disability onset date of January 1, 2007 (Tr. 93). Upon denial of the claim, Plaintiff requested an administrative hearing, held on April 20, 2010 in Orland Park, Illinois (Tr. 24). Administrative Law Judge ("ALJ") Karen Sayon presided (Tr. 24). Plaintiff, represented by

attorney Mikel Lupisella, testified by video conference from Flint, Michigan (Tr. 29-38), as did Vocational Expert ("VE") Michelle Robb (Tr. 39-42). On April 27, 2010, ALJ Sayon found that Plaintiff was able to return to her past relevant work (Tr. 19-20). On December 16, 2010, the Appeals Council denied review (Tr. 1-3). The Appeals Council decision noted that since the ALJ Sayon's April 27, 2010 denial, Plaintiff's second application for benefits (alleging disability as of April 28, 2010) had been approved, but found that the subsequent disability finding did not provide a basis for disturbing the original decision (Tr. 2). Plaintiff filed suit in this Court on February 21, 2011.

## II.  BACKGROUND FACTS

Plaintiff, born February 25, 1949, was 61 at the time of the administrative decision (Tr. 19-20, 93). She graduated from high school and completed two years of college (Tr. 133). She previously performed assembly line work at the light exertional level (Tr. 129). She alleges disability as a result of Carpal Tunnel Syndrome ("CTS"), anxiety, and knee and back problems (Tr. 128).

### A. Plaintiff's Testimony

Plaintiff testified that she currently lived with her husband and adult son (Tr. 29). She stated that she stood approximately five feet tall and weighed 163 pounds (Tr. 29-30). She indicated that she limited her driving to short distances because of anxiety (Tr. 30). She testified that she currently received monthly pension payments of around $3,000 (Tr. 30). She stated that since ceasing work in January, 2007, her work activity was limited to babysitting her two-year-old granddaughter from 21 to 32 hours per week, for which she was

paid $1.60 an hour by social services (Tr. 31).

Plaintiff reported that her former job required her to stand or walk for most of her shift and lift up to 20 pounds (Tr. 32). She stated that she stopped working because she "was unable to do the job anymore" (Tr. 32). She alleged that knee pain and anxiety were her primary problems and that she continued to experience difficulty climbing stairs (Tr. 32). She estimated that she could walk between 30 and 60 minutes before requiring a rest (Tr. 33, 37). She denied the use of a cane (Tr. 33-34). She admitted that she had been advised to undergo knee surgery, but was apprehensive due to problems encountered in a previous knee procedure (Tr. 34). She also reported lower back spasms, rating her back pain as a "7" on a scale of 1 to 10 (Tr. 34). She stated that she currently took Vicodin as well as anxiety medication (Tr. 35). She denied medication side effects, but reported that anxiety prevented her from sleeping well (Tr. 35).

Plaintiff described a typical day as follows: she arose at 8:00 a.m., drank coffee, made breakfast, performed household chores with the help of her husband and son, and watched her granddaughter (Tr. 36). She stated that she took walks three days a week (Tr. 37). She denied the ability to lift more than 10 pounds (Tr. 38).

In response to questioning by her attorney, Plaintiff stated that her husband and son helped her care for her grandchild (Tr. 38).

### B. Medical Records

#### 1. Treating Sources

In June, 2007, treating physician David Easton, D.O. remarked that Plaintiff reported

worsening knee pain (Tr. 253). Examination notes following Plaintiff's August, 2007 right knee arthroplasty state that "components appear well seated and well aligned" but that she continued to experienced swelling (Tr. 160, 187, 196-197, 205-206, 241-242). The following month, Dr. Easton noted that Plaintiff exhibited a limited range of motion (Tr. 202, 292). However, Dr. Easton's notes in November, 2007 state that Plaintiff's range of motion had "picked up a great deal" (Tr. 202, 246, 292).

In February, 2008, imaging studies of the thoracic and lumbar spine showed "considerable degenerative disc findings" at T11-12 and T12-L1, and moderate degenerative changes at L5-S1 (Tr. 217). Plaintiff reported low back pain but stated that her right knee was "fine" (Tr. 208, 283). She demonstrated a full range of motion (Tr. 208). She was advised to perform stretching exercises and continue taking Tylenol with Celebrex (Tr. 208-209, 283-284). The following month, Plaintiff reported continued lower back pain, but according to Dr. Easton's notes, was able to sit "comfortably on the exam table" (Tr. 282). Dr. Easton noted that recent x-rays showed degenerative changes (Tr. 217, 282). July, 2008 treating notes state that Plaintiff's depression was stable but that she reported bilateral knee pain (Tr. 309). In December, 2008, an echocardiogram revealed the presence of an atrial septal defect (Tr. 335). Plaintiff was advised to undergo a heart catheterization (Tr. 336).

In January, 2009, Plaintiff reported shortness of breath and chest pain (Tr. 297, 323). The following month, Plaintiff underwent a catheterization for an atrial septal defect (Tr. 294-295, 319-320). The defect was repaired without complications (Tr. 295). The following month, Plaintiff reported that she felt well and was "able to perform her daily activities

without any limitations" (Tr. 312). In September, 2009 treating notes indicate that Plaintiff did not want to undergo a left knee replacement because she was currently taking care of her grandchildren (Tr. 301). The following month, an echocardiogram was unremarkable (Tr. 310-311, 329).

### 2. Consultive and Non-Examining Sources

In March, 2008, a non-examining Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for approximately six hours in an eight-hour workday; and push and pull without limitation (Tr. 275). Plaintiff was precluded from all climbing of ladders, ropes, and scaffolds, but deemed able to balance and stoop on a frequent basis and climb stairs, kneel, and crouch on an occasional basis (Tr. 276). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 277-278). Citing the consultive and treating records, the assessor noted that Plaintiff had healed well from the August, 2007 knee surgery and did not exhibit significant manipulative or psychological issues (Tr. 181). Plaintiff's allegations were deemed "not fully credible" (Tr. 281). The same month, a non-examining Psychiatric Review Technique found that Plaintiff's symptoms of depression and anxiety were "non-severe" (Tr. 260, 263, 265). Plaintiff's restrictions in activities of daily living, social functioning, and concentration were deemed "mild" (Tr. 270).

### C. Vocational Testimony

VE Robb classified Plaintiff's past work as an assembler and child care provider as

exertionally light and unskilled[1] (Tr. 39). The ALJ then determined that the child care work did not constitute substantial gainful activity ("SGA") for the purposes of the "past relevant work" analysis (Tr. 40). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work history:

> She is limited to light work, work that involves lifting and carrying up to 10 pounds frequently, 20 pounds occasionally. Standing and walking about six out of eight hours in a workday, the other time spent sitting. She should have no climbing of ladders, ropes or scaffolding, only occasional climbing of ramps and stairs, as well as only occasional kneeling and crouching. Given those limitations, would her past work as an assembler be available?

(Tr. 40). The VE replied that based on the above limitations, Plaintiff was capable of returning to her past relevant work as an assembler as generally performed in the national economy (Tr. 40). The VE testified that if the same individual were limited to four, rather than six, hours per day of standing and walking with a sit/stand option, she was also capable of of working as an assembler as the job was generally performed in the national economy, but not as it was actually performed (Tr. 41).[2] The ALJ acknowledged, in effect, that there

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[2] At Step Four of the sequential analysis, the Commissioner considers whether the claimant has the RFC to perform the functional demands and duties of a past job *as actually performed by the claimant*. SSR 82-61. If so, the claimant is not disabled. If not, the

-6-

were not a significant number of light assembler positions available to a worker who could stand or walk only two hours per workday (Tr. 42).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Sayon found that although Plaintiff experienced the severe impairments of "degenerative joint disease of the right knee; degenerative disc disease of the lumbar spine, and obesity," none of the conditions met or equaled any impairment listed in Appendix 1, Subpart P, Regulations No.4 (Tr. 15-16). She determined that Plaintiff's symptoms of "depression; anxiety; a history of bilateral carpal tunnel syndrome; and atrioseptal defect with February 2009 right heart catheterization" were "non-severe" impairments (Tr. 15).

The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following restrictions:

> [L]ifting and carrying up to ten pounds frequently and twenty pounds occasionally, sitting about six hours in an eight-hour workday, and standing and/or walking about six hours in an eight hour workday, with normal breaks. She cannot climb ladders, ropes or scaffolds and can climb ramps and stairs only occasionally. The claimant can perform occasional kneeling and crouching.

The ALJ discounted Plaintiff's allegations of disability, noting that treating records post-dating the August, 2007 knee surgery showed a good recovery (Tr. 17). The ALJ

---

Commissioner then considers (as here) whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* If the claimant is able to do the job as generally performed in the national economy, she is not disabled.

-7-

acknowledged March, 2008 imaging studies showing degenerative changes, but noted that although Plaintiff's back condition remained essentially stable (Tr. 17). Finally, the ALJ noted that Plaintiff's conditions did not prevent her from caring for a granddaughter on a regular basis since the child's birth (Tr. 18).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.    ANALYSIS

**Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work**

Plaintiff makes two interwoven arguments for remand. First, she argues that the hypothetical question to the VE (mirrored in the RFC found in the ALJ's opinion) did not account for her full degree of limitation. *Plaintiff's Brief* at 6-7. Second, she contends that

both the hypothetical question and RFC were tainted by the ALJ's flawed credibility analysis. *Id.* at 8-13.

Because the determination of Plaintiff's second argument is also dispositive of the hypothetical question/RFC issue, I begin with discussion of the ALJ's credibility determination. Specifically, Plaintiff contends that the ALJ's rejection of the disability claims is based on a cursory review of the treating records. *Id.* at 8-13.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Contrary to Plaintiff's argument that the ALJ discussed "very few medical records of evidence," *Plaintiff's Brief* at 7, the administrative opinion contains a accurate and thorough chronology of Plaintiff's mostly conservative treating records (Tr. 16). The ALJ also cited treating records stating that Plaintiff's depression and anxiety were stable (Tr. 16). She noted that Plaintiff had not received treatment since the alleged onset of disability for hand or wrist problems (Tr. 16). She cited post-arthroplasty reports showing that Plaintiff's mobility continued to improve in the three to four months following surgery (Tr. 17). Plaintiff's argument that the ALJ overlooked or mis-characterized some of the medical evidence is without merit (Tr. 17).

Similarly, I find no error at the second prong of SSR 96-7p which directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally

limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze the claims "based on a consideration of the entire case record."[3]  Consistent with the Regulation's requirements, the ALJ acknowledged Plaintiff's testimony that she quit work (just after her 30-year mark) because she was unable to lift more than 10 pounds, and had chronic back and knee pain (Tr. 17).  However, the ALJ reasonably found that Plaintiff's allegations were undermined by the fact that she had not undergone recent treatment for hand or wrist problems and was able to care for her grandchild up to 32 hours each week since becoming "disabled" (Tr. 17-18).

Plaintiff also disputes the credibility determination on the basis that the ALJ did not consider her testimony that her childcare activities amounted to no more than sitting and watching her grandchild climb on furniture.  *Plaintiff's Brief* at 8 (citing Tr. 36).  However, as noted by the ALJ, treating notes show that Plaintiff declined to undergo bilateral athroscopic surgeries because she was caring for her grandchild (Tr. 301).  The ALJ's

---

[3]C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating in making the determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

inference that Plaintiff played a more active role in her granddaughter's care than sitting and watching her play is supported by substantial evidence. As to the treating records, the ALJ cited Dr. Easton's observation that Plaintiff exhibited full grip strength and was able to sit comfortably on an examination table (Tr. 17). She also noted that Plaintiff had recovered fairly quickly from knee surgery (Tr. 18). While Plaintiff argues, in effect, that her February and March complaints of back problems were glossed over, the administrative opinion contains a discussion of the treating records for this period (Tr. 17). Because the credibility determination is well supported and explained, remand on this issue is not warranted.

Plaintiff's related argument that all of her professed limitations ought to have been included in the hypothetical question and RFC is also without merit. To be sure, the failure to account for a claimant's work related limitations in the hypothetical question to the VE constitutes error. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). However, having thoroughly explained her reasons for rejecting Plaintiff's less than credible allegations of limitation, the ALJ was not obliged to include them in either the hypothetical question or RFC.[4] *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994).

In closing, I note that Plaintiff's subsequent application for DIB (alleging disability

---

[4]

The "hypothetical question" argument is further undermined by the fact that the ALJ, in making her Step Four finding that Plaintiff could return to her former work, was permitted but not required to use the VE. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *See also Mays v. Barnhart,* 78 Fed. Appx. 808, 813–814 (3rd Cir.2003)("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ").

as of the day after ALJ Sayon's opinion) has been granted. However, neither party has argued that the later application is relevant to the present determination. Based on the transcript before this Court, the ALJ's decision was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and therefore should not be disturbed. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment be DENIED (Doc. #9) and that Defendant's Motion for Summary Judgment (Doc. #10) be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and

order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: April 2, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 2, 2012.

s/Johnetta M. Curry-Williams<br>
Case Manager